UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

VLADIMIR KRECHMAR,

    Plaintiff,

v.                                Case No.:  2:25-cv-01095-SPC-DNF

PARRA *et al.*,

    Defendants,
_____/

## OPINION AND ORDER

Before the Court are petitioner Vladimir Krechmar's Petition for Writ of Habeas Corpus (Doc. 1), the government's response (Doc. 11), and Krechmar's reply (Doc. 112).  For the below reasons, the Court grants the petition.

**A. Background**

Krechmar is a native of the former Soviet Union.  He was lawfully admitted to the United States as a refugee in or around 1980, he became a lawful permanent resident in 1983, and he became stateless when the Soviet Union dissolved in 1991.  Krechmar became deportable after several unspecified convictions, and an immigration court ordered him removed to the former Soviet Union on April 5, 1996.

The Department of Homeland Security ("DHS") deferred action on Krechmar in 2010, 2011, and 2012.  Immigration and Customs Enforcement ("ICE") arrested Krechmar in 2017 and detained him pending deportation to

Ukraine, the current country of his geographical birth zone. But Ukraine refused to accept Krechmar. After six months of detention, ICE released Krechmar subject to an order of supervision.

Krechmar has remained in the United States since then, he financially supports his U.S. citizen wife and children, and he has fully complied with the supervision terms. ICE arrested him again on November 19, 2025, without providing a reason for his detention. Krechmar challenges the legality of his detention under *Zadvydas v. Davis*, 533 U.S. 678 (2001).

**B. Jurisdiction**

Before addressing the merits of Krechmar's claim, the Court must address its jurisdiction. The respondents argue two sections of the Immigration and Nationality Act ("INA") strip the Court of jurisdiction over this action. They first point to a provision that bars courts from hearing certain claims. It states:

> Except as provided in this section and notwithstanding any other provisions of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). This jurisdictional bar is narrow. "The provision applies only to three discrete actions that the Attorney General may take: her 'decision

or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders." *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999); *see also Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) ("We did not interpret this language to sweep in any claim that technically can be said to 'arise from' the three listed actions of the Attorney General. Instead, we read the language to refer to just those three specific actions themselves."). "When asking if a claim is barred by § 1252(g), courts must focus on the action being challenged." *Canal A Media Holding, LLC v. United States Citizenship and Immigration Servs.*, 964 F.3d 1250, 1258 (11th Cir. 2020).

The respondents also raise the INA's "zipper clause," which states:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court should have jurisdiction, by habeas corpus under section 2241 or title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such question of law or fact.

8 U.S.C. § 1252(b)(9). The zipper clause only applies to claims requesting review of a removal order. *See Madu v. U.S. Attorney Gen.*, 470 F.3d 1362, 1365 (11th Cir. 2006) (holding the INA did not divest the district court of jurisdiction over a § 2241 challenge to detention of the petitioner pending deportation).

Krechmar does not challenge the commencement of a proceeding, the adjudication of a case, or the execution of his removal order. Nor does he ask the Court to review the removal order. Rather, Krechmar challenges the legality of his detention under a framework devised by the Supreme Court. The INA does not strip the Court of jurisdiction over this action.

The respondents also argue the Court should dismiss this action because Krechmar does not request relief against the warden of Alligator Alcatraz, who they consider the only proper respondent. While a prisoner's immediate custodian is normally the only proper respondent in a habeas action, immigration detention is more complicated. *See*, *e.g.*, *Rumsfeld v. Padilla*, 542 U.S. 426, 435 n.8 (2004) (declining to decide whether the Attorney General is a proper respondent to a habeas action filed by an alien detained pending deportation).

While Alligator Alcatraz is a state-run facility, ICE controls who is admitted, detained, and released. The warden of Alligator Alcatraz would be ill-equipped to respond to the merits of Krechmar's claims and to be the sole defender of the federal government's interests. The Southern District of Florida explained why the director of ICE's local field office is a more appropriate respondent:

> Moreover, when a federal immigrant detainee is housed in a contract facility, the federal official charged with overseeing the detainees in that facility is more akin to the "immediate

> custodian"—the individual with the power to produce the body of the petitioner before the court—than a non-federal warden. *Padilla*, 542 U.S. at 434, 124 S. Ct. 2711. Federal immigration detainees are detained "pursuant to the power and authority of the federal government" and not the warden of the non-federal facility where they are detained. *Saravia* [*v. Sessions*, 280 F. Supp. 3d 1668, 1186 (N.D. Cal. 2017]. A local warden's custody over the detainee is limited "only to the extent provided by the facility's contract with the federal government." *Id.* The local warden cannot release ICE detainees without ICE's express authorization. Rather, "ICE is in complete control of detainees' admission and release," while the IGSA "places the warden in the role of a mere functionary." *Calderon* [*v. Sessions*, 330 F. Supp. 3d 944, 952 (S.D.N.Y. 2018)].

*Masingene v. Martin*, 424 F. Supp. 3d 1298, 1302 (S.D. Fla. 2020).

Krechmar names Garrett Ripa, Director of ICE's Miami Field Office, as a respondent to his petition. Based on the above reasoning, the Court finds Ripa a proper respondent.

### C. Legality of Detention

"Once a noncitizen's order of removal becomes administratively final, the Government 'shall' remove the person within 90 days." *Singh v. U.S. Attorney Gen.*, 945 F.3d 1310, 1313 (11th Cir. 2019) (quoting 8 U.S.C. § 1231(a)(1)(A)). The government must detain the noncitizen during the 90-day removal period, which begins when the removal order becomes administratively final. *Id.* Detention may continue after the removal period, but not indefinitely.

In *Zadvydas*, the Supreme Court held, "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no

longer authorized by statute." 533 U.S. at 700-01 (2001). If removal is not practically attainable, detention no longer serves its statutory purpose of "assuring the alien's presence at the moment of removal." *Id.* at 699. The Court found it unlikely Congress "believed that all reasonably foreseeably removals could be accomplished in [90 days]." *Id* at 701. So, "for the sake of uniform administration in the federal courts," it established a "presumptively reasonable period of detention" of six months—the 90-day removal period plus an additional 90 days. *Id.* Courts use a burden-shifting framework to judge the constitutionality of additional post-removal detention:

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut the showing.

*Id.*

The respondents argue Krechmar's petition is premature because he has not been detained for longer than six months. Their argument assumes the six-month clock started on November 19, 2025, when Krechmar's current detention began, despite his six-month detention in 2017. That assumption is inconsistent with *Zadvydas*. It would effectively allow DHS to detain noncitizens indefinitely and avoid judicial scrutiny by releasing and re-detaining them every six months. As the Eleventh Circuit recognized, "[t]he Supreme Court's stated rationale for establishing a presumptively reasonable

'6-month period' for detention pending removal supports our conclusion that this period commences at the beginning of the removal period." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 n.3 (11th Cir. 2002).

Because the six-month period for presumptively reasonable detention has expired, *Zadvydas*'s burden-shifting framework applies. Krechmar has carried his initial burden by showing a good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. In fact, ICE made that determination in 2017, when it released Krechmar under an order of supervision. The burden thus shifts to the respondents, but they make no attempt at rebuttal. There is no evidence before the Court to suggest removal is more likely now than it was in 2017.

### D. Conclusion

The Court finds no significant likelihood Krechmar will be removed in the reasonably foreseeable future. He is entitled to release from detention under *Zadvydas*, but he remains subject to the terms of the 2017 order of supervision. Accordingly, it is hereby

**ORDERED:**

Vladimir Krechmar's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED**.

1. The respondents shall release Krechmar within 24 hours of this Order, and they shall facilitate his transportation from the detention facility by notifying his counsel when and where he can be collected.

2. The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close this case.

**DONE AND ORDERED** in Fort Myers, Florida on December 15, 2025.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-1